UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| DIXIE WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-55-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY STATE UNIVERSITY, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Dixie Webb ("Webb") was employed by Defendant Kentucky State University ("KSU") as an Assistant Professor in the school's Nursing Department from 2002 through June 2009. Webb filed suit after she was denied tenure and after she completed an additional one-year contract with the university. Webb claims that KSU and the individually-named defendants retaliated against her because she hired counsel to inquire about her request for an administrative hearing in connection with her application for tenure. She also contends that KSU failed to provide her with due process protections in connection with the denial of her tenure application. Additionally, Webb asserts that she was ultimately replaced by a younger individual in violation of Kentucky Revised Statutes ("KRS") § 344.040 which prohibits age discrimination.

The matter is currently pending for consideration of the defendants' joint motion for summary judgment. [Record No. 17] The defendants assert that judgment should be entered in their favor because KSU is immune from suit under the facts alleged. Further, the individual

defendants contend that they are entitled to qualified immunity with respect to their tenure decision regarding the plaintiff. The defendants also assert that Webb was provided with procedural due process, but failed to request timely review of their tenure decision. Finally, the defendants argue that Webb's claims that they discriminated against her because of her age and breached an additional one-year contract for the 2009-2010 academic year are without merit, both factually and legally. Having considered the parties' respective positions, the Court concludes that there are no material issues of fact in dispute. Further, the defendants are entitled to judgment in their favor.

## I.

Webb filed this action in the Franklin Circuit Court on October 22, 2009, asserting three counts for relief. In addition to KSU, Webb named as defendants: Dr. Betty Olinger, Chair of KSU's Department of Nursing, in her individual capacity; Dr. Charles Bennett, Dean of KSU's College of Science and Technology, in his individual capacity; Dr. James Chapman, KSU Provost, in his individual capacity; and Dr. Mary Sias, President of KSU, in her individual capacity "as President of Kentucky State University". The various capacities in which the individual defendants have been sued are taken from the caption of the plaintiff's Complaint filed in the Franklin Circuit Court. The text of the Complaint does not clarify the ambiguity regarding the nature of the claims asserted against Defendant Mary Sias, President of KSU. Therefore, out of an abundance of caution, the Court will address Webb's claims against Sias as if they are asserted against her in her individually and in her official capacity. There are other noteworthy ambiguities such as the allegation contained in paragraph 21 which asserts that,

"[t]he Plaintiff was informed by the Chair of her Department Dr. Betty Olinger on or about July 9, 2009." [Record No. 1; attached Complaint] The nature of the information allegedly provided by Olinger is not stated in the Complaint.

In Count I, Webb contends that the defendants' decision to deny her tenure violated her rights under the Fourteenth Amendment to the United States Constitution. In Count II, she asserts an alleged violation of age discrimination under the Kentucky Civil Rights Act, KRS § 344.040. Finally, in Count III, Webb asserts a claim of retaliation under the First Amendment. With respect to this last count, Webb argues that the retaliation occurred because she hired an attorney to challenge the school's tenure decision. [*Id.*] Webb's prayer for relief seeks a determination that the violations she has alleged have occurred. She also seeks an award of monetary damages, attorney fees, and "any legal or equitable relief [for which] she may be entitled." [*Id.*]

The defendants removed the action to this Court on November 9, 2010, based on Webb's federal claims. [Record No. 1] In their Answer, the defendants asserted that the claims against KSU should be dismissed because it was entitled to absolute immunity under the Eleventh Amendment to the United States Constitution.[1] Additionally, with respect to the plaintiff's procedural due process claim, the defendants assert that Webb failed to exhaust the

---

[1] The vehicle for asserting federal constitutional and due process claims is 42 U.S.C. § 1983. Under this statutory section, a plaintiff has one year to file an action. *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009). In cases involving university tenure decisions, the one year period begins to run when the plaintiff receives notice that his or her application for tenure has been denied. In this case, Webb received notice of the tenure decision on or about January 29, 2008. However, she did not file suit until state court until October 22, 2009. For reasons which are not readily apparent, the defendants have not asserted as an affirmative defense the fact that Webb did not timely file her action challenging the denial of her tenure application.

administrative remedies available to her. Finally, the individual defendants contended that they were entitled to qualified immunity for their action regarding tenure decisions. [Record No. 5]

Following discovery, the defendants moved for summary judgment. [Record No. 17] In addition to filing a supporting memorandum, the defendants submitted: (1) a portion of Webb's deposition taken June 14, 2010, together with several exhibits introduced during the deposition; and (2) the affidavit of Angela Curry, KSU's general counsel, with a copy of portions of KSU's Faculty Handbook & Staff Personnel Policy & Procedures Manual ("KSU Faculty Handbook") and KSU records relating to Webb's tenure and promotion application and decision. It does not appear that the plaintiff has deposed any of the defendants. However, it does appear that some written discovery was submitted.

Webb responded to the defendants' motion for summary judgment on August 9, 2010. In addition to responding to the defendants' legal arguments, Webb submitted several documents relevant to her application for tenure and the defendants' internal and external response to that application. Several of these attachments are relevant to the issues raised by the parties and are discussed below.

## II.

Many of the defendants' arguments are based on the KSU Faculty Handbook which provides that, "[a]ll faculty who receive a tenure track contract are placed on probationary status for a period not to exceed 6 years." [Record No. 17; Exhibit B-1, Section 2.2.2] The handbook further provides that, if tenure is not granted, then the employee can be employed for only one additional year. They assert that this policy was followed in the present case. Further, the

plaintiff acknowledged in her deposition that she was aware of the university policy regarding tenure at times relevant to this action. [Record No. 17; Exhibit A, p. 14] Additionally, the defendants contend that, after Webb was informed that she would not receive tenure, she failed to appeal that decision internally within the time permitted.

### A. Webb's Employment at KSU

Webb was employed at KSU as an Assistant Professor of Nursing beginning September 10, 2002. Webb received her bachelors degree from the University of Kentucky in 1967 and a masters degree from the same school in 1977. Additionally, she had completed either 15 or 18 hours toward a doctorate degree at the time of her employment with KSU. [Record No. 17; Exhibit A., p. 6]

By letter dated March 13, 2007, Webb advised Olinger, Chair of the Nursing Department, that she wished to apply for an extension of time to submit her tenure application. [Record No. 20; Exhibit 1] After stating her understanding that KSU President Sias has approved similar extensions, Webb represented that the additional time sought would "allow me to better assess my decision regarding tenure." [*Id.*] When the request was eventually denied, Webb applied for tenure in her sixth year of employment even though she felt "coerced" in submitting the application. At that time, she was told by Dr. Olinger, the Chair of KSU's Department of Nursing, that should she apply for tenure and not receive it, she would have one additional year of employment at the school. [Record No. 17; Exhibit A, p. 14]

Webb's application for tenure was eventually submitted around October 3, 2007. On November 20, 2007, KSU's Tenure and Promotion Committee notified Dr. Chapman, KSU's

Interim Provost, that the committee recommended that Webb be denied tenure. This decision was communicated to KSU President Sias who wrote to Webb, informing her of the recommendation against tenure.[2]  [*Id.*; Exhibit A-1]

The KSU Faculty Handbook outlines the time and manner by which an aggrieved party may appeal the decision to deny tenure. It provides that a faculty member who has been denied tenure has the right to appeal to the President for a hearing before the University Appeals Committee. [Record No. 17; Exhibit B-2, Section 2.7.6]  This appeal must be made by the faculty member no later than thirty calendar days after receipt of official notice of denial of tenure. Here, notice of the Tenure and Promotion Committee's decision was communicated to Webb on January 29, 2008. Webb claims that she was advised of the specific reasons that her tenure application had been denied approximately thirty days after she received notice from President Sias. However, Webb did not advise President Sias that she wished to challenge the decision until May 13, 2008 – approximately three and one-half months after receiving notice of the decision and approximately two and one-half months after allegedly being advised of the reasons for the decision.

### B.    The Materials Submitted In Support of Webb's Application for Tenure

Several materials submitted to KSU's Tenure and Promotion Committee favored granting tenure to Webb.[3]  These materials included letters of support from other Associate Professors as

---

[2]  KRS 164.360(1) provides that the Board of Regents of state universities may employ faculty members and fix their compensation and tenure of service on the recommendation of the president. Thus, the Board of Regents may not act to grant tenure unless it is recommended by the president of the university.

[3]  A memorandum dated September 24, 2007, from Dr. Bonnie Quarles, Chair of the School of Nursing's Tenure and Promotion Committee, to Dr. Betty Olinger, states that the School of Nursing's tenure committee had met and voted unanimously in favor of tenure for Webb. A later version of this memorandum adds that

well as a memorandum from Dr. Olinger, Chair of NKU's School of Nursing. [Record No. 17; Exhibit B-3] It is clear that Dr. Olinger and other tenured professors within nursing department strongly favored granting tenure to Webb. In fact, Webb describes Olinger as negotiating on her behalf at relevant times and ultimately suggesting that she hire an attorney to challenge the denial of her tenure application. [Record No. 17; Exhibit A, pp. 12-13, 27] It also appears that Webb met the *department's* requirements for tenure. In relevant part, Dr. Olinger's October 2, 2007, memorandum to Dr Charles Bennett, Dean of KSU's College of Mathematics, Science, Technology, and Health, states that Webb "meets or exceeds all qualifications for tenure as identified in the <u>Kentucky State University Faculty Handbook, Appendix N, Nursing Education Unit</u>." The memorandum further provides:

> Ms. Webb currently has 15 graduate hours beyond Master's degree in the Health Promotion doctoral program at the University of Kentucky.
>
> Ms. Webb has a proven record of professional achievement. She is a member of her professional organizations. In addition, she is a Retired Naval Reserve Commander.
>
> Ms. Webb has a systematic understanding of current medical-surgical nursing. She has over 30 years of teaching experience and extensive clinical experience. Her philosophy of teaching demonstrates a commitment to teaching and learning. She is willing to explore new methods of teaching with students.
>
> Ms. Webb is active in service activities for the University and her community. She has served on University committees and is a contributor to the School of Nursing committees. In addition, she has served on numerous committees in her community.
>
> Based on Ms. Webb's commitment to education, her nursing knowledge and skills, as well as my professional and personal knowledge of her skills,

---

the committee "highly recommends Ms. Webb for tenure." [Record No. 17; Exhibit 3-B]

knowledge and experiences, I highly recommend Ms. Dixie Webb's tenure. She will be an asset to Kentucky State University for many years to come.

[Record No. 17; Exhibit B-3]

It does not appear that Dr. Olinger provided supporting documentation or information regarding the service activities referenced in her memorandum. Likewise, no reference was made or information provided regarding any professional writings or publications submitted by Webb during her employment at KSU. Based on the information contained in Dr. Olinger's October 2, 2007, memorandum, Dean Bennett made a similar recommendation to KSU's Provost, Dr. James Chapman. Again, however, any reference to writings and publications was notably absent. [Record No. 17; Exhibit B-3]

On November 20, 2007, The KSU Tenure and Promotion Committee provided its recommendation that Webb not be given tenure at the school. By memorandum, Provost Chapman was advised that the committee's decision was based, in large part, on Webb's lack of scholarly activities (*i.e.*, research and publications) and service while employed at the university. The committee noted:

> We reviewed [Webb's] dossier according to University policies and procedures contained in Sections 2.6-2.7 (2005) and Appendix N of the *Faculty Handbook*. Based on our review, the Committee makes the following recommendation:
>
> The Committee voted 5-1 that Ms. Dixie Webb not be granted tenure at the rank of Assistant Professor.
>
> *   *   *
>
> Ms. Webb's dossier contains evidence of her teaching effectiveness. Her peer evaluations are very positive, and she is cited as, being a "team player". The student evaluations are positive.

The dossier itself appears to be hastily compiled, as each of Ms. Webb's narratives were either a single paragraph, and in at least one instance, a sentence. It is obvious that the Unit, Chairperson, and Dean appreciate the wealth of knowledge and experience that Ms. Webb brings to her Division. However, the committee feels that she should have exerted herself at least somewhat outside the classroom (as her scholarly and creative activity are sorely lacking.) The Committee's concern is that Ms. Webb has not exhibited much growth since her KSU appointment. As stated in Section 2.6.1 of the *Faculty Handbook*, "Candidates for promotion or tenure must demonstrate an ability to perform at high professional levels in areas which contribute to the mission of the University." The areas include; [sic] Teaching Effectiveness, Scholarly Research and Creative Activity and Service. The two areas in which the committee felt Ms. Webb was lacking are quoted below per the *Faculty Handbook*:

Section 2.6.1.2: *Scholarly Research and Creative Activity*: "Scholarly research and creative activity are also important factors in granting tenure and promotion as they are activities which serve to advance the discipline or the state of the art."

Although she came to KSU with a wealth of experience, it does not appear that she has been actively engaged in scholarly activity since her arrival. Ms. Webb cites a published article and a textbook as part of her creative activity. However, these materials were published in 1978 and 1988, respectively. Her 15 credits of doctoral work took place from 1999-2002, and were not pursued since her appointment. The Committee finds that Ms. Webb's Scholarly Creative Activity is not adequate to support that she meets the requirement in this category.

*Section 2.6.1.3 Service*
"Faculty members are expected to make professional contributions through service to the academic unit and the University at large."

In the category of Professional Contributions through to the University and to her unit, Ms. Webb only listed participating in faculty meetings and some recruitment activities on and off campus. There is no evidence that she has exerted herself in regards to service. Therefore, the Committee finds that Ms. Webb does not meet the requirements in this category.

Having concluded that Ms. Dixie Webb does not meet all requirements for tenure, the University Tenure and Promotion Committee recommends that she not be granted tenure.

[Record No. 17; Exhibit B-3]

After reviewing all materials submitted by the various committees, Provost Chapman recommended on December 7, 2007, that Webb not receive tenure at KSU. [Record No. 17; Exhibit B-3] On January 29, 2008, KSU President Sias notified Webb that she would not be recommended for tenure to the school's Board of Regents. President Sias' letter to Webb advised her of the information reviewed, the fact that her request for tenure had been denied, as well as the fact that she could appeal the denial of tenure "in accordance with University policies outlined in the Faculty Handbook . . ." [Record No. 17; Exhibit B-3] More specifically, this letter stated:

> Your file was sent to me, as President of Kentucky State University, after a review by the University-wide Committee on Tenure and Promotion, and a review by Dr. James Chapman, Provost and Vice President for Academic Affairs. As required, I am notifying you by February 1st of the recommendation I will be forwarding to the Board of Regents (Board). *It is with regret that I advise you that your application for tenure in Nursing has been denied.*
>
> In accordance with University policies outlined in the Faculty Handbook, I will be forwarding my recommendation to the Board for action at its April 25, 2008, meeting. If you would like to appeal the decision, pleas refer to the procedures outlined in the Faculty Handbook.

(Emphasis added.) [Record No. 17; Exhibit B-3] This letter constitutes official notice that Webb would not be given tenure at KSU.

Webb did not seek to challenge the denial of her tenure request until May 13, 2008. On that date, she informed KSU President Sias, Provost Chapman, Dr. Olinger, and Dean Bennett of her belief that she wished to protest the decision based on lack of due process and the failure of the university-wide tenure committee's failure to evaluate her work performance according to nursing benchmarks. [Record No. 20; Exhibit 4] As outlined in the report submitted by the

nursing department's tenure committee, those benchmarks reflected favorably on Webb's tenure application. Webb's e-mail message also outlined a number of factors allegedly affecting her decision to seek tenure as well as the timing of that decision. According to Webb:

> . . . Two years ago I discussed my position with regard to tenure with Dr. Juanita Fleming, she acknowledged and indeed supported my request to not seek tenure as I was an experienced nursing educator who did not plan on 10 more years of teaching. I felt I could be evaluated on a yearly contract.
>
> Last summer I was told that I could either transition to a yearly contract or choose to take a one years [sic] extension on the application for tenure. I chose to take the years [sic] extension which I was told was approved. In September-after the tenure application/dossier was due, I was informed if I did not complete the dossier and apply for tenure I would be terminated this year. I was given 2 weeks to complete my dossier. *The day that I was notified of the committees grounds for refusal was the last day that I could appeal.* It is my understanding that I was NOT evaluated on the Nursing Dept. Benchmarks. I enjoy teaching and have had consistently excellent evaluations, I have had 25 years of experience and completed 15 hours toward a Docturate [sic] and coauthored a textbook. I believe I am a valuable member of the KSU faculty.

(Emphasis added.) [Record No. 20; Exhibit 4] As the italicized portion of Webb's e-mail makes clear, Webb was aware that on the date she received the reasons for the denial of her tenure application was also the last day to appeal that decision. Webb confirms this assertion during her June 14, 2010 deposition. [Record No. 17; Exhibit A, p. 18]

On or about May 27, 2009, Dean Bennett was advised that Webb had retained counsel to assist her in appealing the denial of her application for tenure. Through this letter, Webb's attorney asserts that Webb instituted an administrative appeal but claims that the appeal was never implemented by KSU. [Record No. 20; Exhibit 7] The parties agree that KSU did not respond to this correspondence. However, Webb asserts that, as a result of this letter, KSU retaliated against her by reneging on a representation by Olinger that Webb would be employed

for the 2009-2010 academic year.  Notwithstanding this assertion, Webb admitted during her deposition that, while she believed Olinger had "some authority" to offer her a position, any offer must be approved by others. [Record No. 17; Exhibit A, p. 26]

Webb has also attached an e-mail message from Dean Bennett to Olinger dated June 10, 2009, in which Bennett represents that Provost Chapman had agreed to offer the plaintiff a one-year contract.  The message speculates, however, that "I don't know if Dixie's potential suit will cause him to change his mind – I don't think so.  Maybe Dixie will change hers."  It appears that Olinger, the chair of the Nursing department supporting Webb's application for tenure, forwarded a copy of this e-mail to Webb on or about the same date. [Record No. 20; Exhibit 5]

On July 7, 2009, Webb again communicated with Olinger by e-mail.  While Webb now asserts that she believed KSU had agreed to hire her for a one-year term, this message demonstrates that a number of issues (sick leave, salary, title, etc.) would need to be resolved. [Record No. 20; Exhibit 8]  However, notwithstanding any beliefs held by Webb, Olinger did not have the authority to bind KSU to an employment contract with the plaintiff.  As previously noted, Webb conceded this fact in her deposition.

### C.    The KSU Faculty Handbook

A copy of the KSU Faculty Handbook is attached as Exhibit B-4 to the defendants' motion for summary judgment.  The handbook provides employees seeking a tenured position with criteria under which their performance will be examined.  Section 2.6.1.2 relates to scholarship and research.  This section states that, "scholarly research and creative activity are also important factors in granting tenure and promotion as they are activities which serve to

advance the discipline or the state of the art." In noting Webb's failure to meet this requirement,

KSU's Tenure and Promotion Committee noted that,

> [a]lthough [Webb] came to KSU with a wealth of experience, it does not appear that she has been actively engaged in scholarly activity since her arrival. Ms. Webb cites a published article and a textbook as part of her creative activity. However, these materials were published in 1978 and 1988, respectively. Her 15 credits of doctoral work took place from 1999-2002, and were not pursued since her appointment. The committee finds that Ms. Webb's Scholarly Creative Activity is not adequate to support that she meets the requirement in this category.

[Record No. 17-3]

Likewise, the Tenure and Promotion Committee found that Webb had not demonstrated

sufficient service to support her application to become a tenured professor. Citing Section

2.6.1.3 captioned "Service,"[4] the committee found that,

> In this category of Professional Contributions through service to the University and to her unit, Ms. Webb only listed participating in faculty meetings and some recruitment activities on and off campus. There is no evidence that she has exerted herself in regards to service. Therefore, the Committee finds that Ms. Webb does not meet the requirements in this category.

[Record No. 17-3]

### D.   Webb's One-Year Contract After Tenure Was Denied and Her Retention of Counsel

In accordance with KSU policy, Webb was offered a one-year contract for the 2008-2009

school year after she was denied tenure. This offer of employment is outlined in a letter dated

May 6, 2008, and attached to Webb's deposition as Exhibit 3. As noted in the letter, the term

---

[4] This section of the KSU Faculty Handbook provides:

> Faculty members are expected to make professional contributions through service to the academic unit and the University at large.

automatically terminated at the end of that academic year and would not be renewed. On May 14, 2008, Webb accepted the offer of employment, subject to the terms and conditions outlined in the letter.

One day before signing the contract for the 2008-2009 school year, Webb advised KSU President Sias that she wished to challenge the decision denying her tenure request. However, because Webb did not submit her appeal within thirty days of the January 29, 2008 letter, the university did not respond to her belated request.[5] It appears that no further action was taken in connection with the denial of Webb's tenure until the following year.

By letter dated May 27, 2009, Webb's current counsel wrote to Dr. Bennett, Chair of KSU's Department of Nursing, in an attempt to breathe life into the tenure decision. Counsel advised Dr. Bennett that:

> I have been retained by Mrs. Dixie Webb to assist her with an appeal of the denial of her application for tenure. It is my understanding that Mrs. Webb was denied tenure in the Spring of 2008. Mrs. Webb appealed the decision, but the appeal process was never implemented by Kentucky State University. Mrs. Webb is now being threatened with separation from the University which would not have occurred had she received tenure.
>
> Ms. Webb had a protected interest in her tenured position with Kentucky State University. The failure of the Kentucky State University Administration to implement the Procedures to appeal a denial of tenure has caused Ms. Webb's continued employment with Kentucky State to be in jeopardy.

---

[5] As noted previously, Webb claims that she was advised of the reasons for the denial of her tenure application around early March 2008. Therefore, it is clear that she did not seek to appeal within thirty days of being advised of the reasons for the denial of tenure. To the extent that she seeks to use this as a reason for the delay in filing an appeal, she has not adequately explained her failure to seek an extension to appeal or file an appeal within thirty days of being provided with reasons.

I would appreciate it if you would advise me of the status of Mrs. Webb's appeal of the denial of tenure. I would also appreciate imformation on Mrs. Webb's employment status for the 2009-2010 academic year in the college of nursing.

[Record No. 20; Exhibit 7]

The defendants did not respond to counsel's May 27, 2009, letter and did not employ Webb beyond the 2008-2009 academic year. However, it does appear that there was some internal discussion about Webb being employed for the 2009-2010 year. By e-mail dated June 10, 2009, Bennett advised Olinger of the following:

The provost . . . said that he will be able to hire Dixie [Webb] and Diane for 2009-2010 and only for that year. We will need to continue our search. I need to send him a reminder to communicate this message to you. I don't know if Dixie's potential suit will cause him to change his mind. I don't think so. Maybe Dixie will change hers.

[Record No. 20; Exhibit 5] And while there is no indication in the record that she was requested to do so, Olinger forwarded this information to Webb on the same date.

Webb responded to the information forwarded by Olinger on July 7, 2009. This e-mail response indicates that Webb had not agreed to an employment contract with KSU for the 2009-2010 academic year and that there were a number of unresolved issues (ability to retain sick leave, salary, and her title). [Record No. 20; Exhibit 8]

As noted above, there is no indication that any of the individual defendants were deposed in this case. Therefore, there is no testimony from President Sias or Provost Chapman that Webb's decision to retain counsel resulted in the cancellation or withdrawal of any offer of a contract for 2009-2010. In fact, there is no indication that any such offer was made by the university.

-15-

## III.

This matter is pending for consideration of defendants' motion for summary judgment with respect to all claims asserted against them in this proceeding. As noted previously, Webb has asserted federal claims that KSU failed to provide procedural due process to her in connection with its tenure decision and that the defendants violated her rights guaranteed by the First Amendment by retaliating against her after she hired an attorney. She has also asserted a state claim of age discrimination under KRS § 344.040.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the party seeking summary judgment to establish that no genuine issue of material fact exists. *Id.* This burden "'may be discharged by showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (other internal quotation marks omitted)). To survive summary judgment, the nonmoving party must then offer "'significant[] probative' evidence in support of its position." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

At pages 10-11 of her memorandum opposing the defendants' motion for summary judgment, Webb argues that, under the standard set out in *Steelvest v. Scansteel*, 807 S.W.2d

476, 483 (1991), summary judgment regarding her state law claims should only be granted if it were to be impossible for her to produce evidence at trial warranting a judgment in her favor. [Record No. 20]  With respect to this argument, the Court notes that the standard applied to summary judgments in state courts in Kentucky is not applied to such motions filed in federal courts.  Instead, this Court and all other federal courts follow the well-known trilogy of cases decided by the Supreme Court in 1986:  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 477 U.S. 574 (1986).

The Sixth Circuit has long recognized that *Anderson, Celotex* and *Matsushita* caused "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id*. at 1479.  In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id.*  (quoting *Anderson,* 477 U.S. at 257).  Further, the nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (quoting *Matsushita,* 475 U.S. at 586).  Moreover, "[t]he trial court no longer has a duty to search the

entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

>   **A.** **Defendant Kentucky State University Is Entitled To Absolute Immunity Under the Eleventh Amendment. Likewise, The Individual Defendants Are Entitled to Absolute Immunity To The Extent They Are Sued In Their Official Capacities.**

The Eleventh Amendment prohibits suits against state governments and their agencies unless Congress abrogates the sovereign immunity of the state. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Citing KRS § 164.290, the defendants assert that, as a statutorily-recognized university of the Commonwealth of Kentucky, KSU should be dismissed in accordance with the Eleventh Amendment to the United States Constitution. It contends that, because it has not waived immunity, and because Congress has not overridden its immunity under Section 5 of the Fourteenth Amendment, dismissal of the claims asserted against it is appropriate. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("[S]uit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The plaintiff concedes that Eleventh Amendment immunity shields KSU from any liability in this action. [Record No. 20, p. 6] Further, the Court agrees with the defendants pursuant to well-established authorities.

Additionally, KSU employees, while acting in their official capacities, are a part of the state government and are entitled to Eleventh Amendment immunity. *Hutsell v. Sayre*, 5 F.3d 996, 998-99 (6th Cir. 1993). Other than a few vague references in paragraph 13, the body of the plaintiff's Complaint does not allege any specific actions taken by Defendants Olinger, Bennett,

Chapman, or Sias that would give rise to liability on their part. However, the caption of the Complaint indicates that Defendant Sias is sued "in her individual capacity as president of Kentucky State University." Thus, it appears that Webb's Complaint might state a claim against this defendant in her individual *and* official capacity. However, to the extent that she intends to assert a claim for monetary damages against any of the individual defendant in his or her official capacity, those claims will be dismissed on immunity grounds.

**B.    Defendants Olinger, Bennett, Chapman, and Sias Are Entitled to Qualified Immunity To The Extent They Are Sued In Their Individual Capacities.**

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Citing *Harlow*, the defendants argue that they are immune from liability in connection with their administrative decisions concerning the denial of tenure applications. Here, the individual defendants were performing a discretionary function in reviewing materials submitted by Webb and determining whether she was qualified for tenure. Webb has not sued any of the individuals on the University Tenure and Promotion Committee who first recommended that she not receive tenure. Instead, she has named as defendants two individuals who recommended that she receive tenure (Dr. Betty Olinger and Dr. Charles Bennett) and two individuals who implemented the tenure committee's recommendation that tenure be denied (KSU Provost Dr. James Chapman and KSU President Dr. Mary Sias). With respect to these latter defendants, it is clear that their decisions were administrative in nature. Further, their actions were not taken in violation of any clearly

established statutory or constitutional rights which may be asserted by Webb. Accordingly, these defendants are immune from liability in their individual capacities for any claims of monetary damages asserted in this case.

**C.** **The Plaintiff's Federal Claim For Injunctive Relief Will Be Dismissed Based On Webb's Failure To Avail Herself Of Administrative Remedies In A Timely Manner.**

While absolute and/or qualified immunity forecloses Webb's claims for monetary damages against all defendants under 42 U.S.C. § 1983, the Court must still address whether the plaintiff has asserted a cognizable claim for injunctive relief against Defendant Sias in her official capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 (1989). To assert a claim under 42 U.S.C. § 1983, "a plaintiff must allege the deprivation of a constitutional right caused by a person acting under color of state law." *Bell v. Ohio State University*, 351 F.3d 240, 248 (6th Cir. 2003) (*citing Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267 (6th Cir. 1998)). Thus, to obtain injunctive relief, Webb must provide evidence that one or more of the defendants violated her procedural or substantive due process rights under the Fourteenth Amendment. In Count 1 of her Complaint, Webb asserts that the defendants violated her rights under the Fourteenth Amendment to the United States Constitution.[6] More specifically, she contends that: (i) she had a property interest in continued employment at KSU and in the tenure process utilized by the university; and (ii) the defendants treated her application for tenure in an arbitrary fashion. Thus, she argues her substantive and procedural due process rights were violated. Although not asserted as an affirmative defense in the present case, the statute of

---

[6] The plaintiff also includes in this count an alleged state law claim for breach of contract for employment for the 2009-2010 academic year.

limitations applicable to such claims is one year which commences on the date the plaintiff was informed of the adverse tenure determination. *Haeberle v. University of Louisville*, 90 Fed. Appx. 895, 2004 U.S. App. LEXIS 2126 (6th Cir., Feb. 6, 2004); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("[S]ection 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a).").

### 1.     Procedural Due Process

In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court addressed whether a professor at a state-funded junior college who did not have tenure and was terminated from his position could assert a claim for a violation of procedural due process based on an alleged property interest in continued employment. The Court held that, "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for a number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Id.* at 597. And while the Court did not hold that the plaintiff had a legitimate claim of entitlement for job tenure, it found that the he had a property interest based on the policies and understandings from the "Faculty Guide" insofar as determining his claim to the entitlement. As a result, procedural due process required that the plaintiff be given "an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution' . . . such proof would obligate college officials to grant a hearing at his request." *Id.* at 602-03. Thus, in determining what procedures are due, Courts will look to materials such as

faculty handbooks which often set deadlines for seeking appeals and the manner in which appeals must be prosecuted.

In *Ramsey v. Board of Educ. of Whitley County, Ky.*, 844 F.2d 1268 (6th Cir. 1988), the Sixth Circuit addressed the process due to an aggrieved teacher who claimed a property interest in sick days which had been reduced by the county board of education. Although the court ultimately held that the claim asserted was one for common law breach of contract and, therefore, not actionable under 42 U.S.C. § 1983, it noted that determining what process is due in a given case requires consideration of a number of factors, including the nature of the property interest involved, the risk an erroneous deprivation caused by inadequate procedures designed to safeguard the interest, the value, if any, that additional procedures might provide, and the state's burden in having to provide additional procedures. However, the most important consideration is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* at 1272 (*citing Parratt v. Taylor*, 451 U.S. 527, 540 (1981)).

In *Golden v. Town of Collierville*, 167 Fed Appx. 474, 477-78 (6th Cir. 2006), the Sixth Circuit held that an applicant for a position does not have a "cognizable property interest" in a promotion to establish a procedural due process claim under the Fourteenth Amendment for purposes of § 1983. *See also Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-10 (6th Cir. 2002) ("[I]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it."); *Bantra v. Board of Regents of University of Nebraska*, 79 F.3d 717, 720 (8th Cir. 1996) (university's alleged failure to follow its own procedural rules and regulations when considering a promotion did not, without

more, give rise to a protected liberty or property interest); and *Dube v. State University of New York*, 900 F.2d 587, 599 (2nd Cir. 1990) (college professor who was entitled only to be considered for tenure in accordance with established contractual procedures did not have a protected liberty or property interest in tenure). Thus, while a party may have a right to procedural due process in challenging the decision to deny tenure, the right only requires that proper procedures be followed.

In summary, a professor who is eligible for tenure consideration has some minimal property interest in a fair tenure review process. *See Purisch v. Tennessee Technological University,* 76 F.3d 1414, 1423 (6th Cir. 1996). Procedural due process entitles such a professor to notice and the opportunity to be heard prior to deprivation of his property interest. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). Consequently, a university may not deny a candidate tenure without some degree of impartial inquiry into his or her qualifications. While "some form of hearing is required before an individual is finally deprived of a property interest," the form of hearing required depends upon an "analysis of the governmental and private interests that are affected." *Mathews v. Eldridge,* 424 U.S. 319, 334 (1975). In applying the *Mathews* balancing test in denial-of-tenure cases, the Sixth Circuit has held that less than a full evidentiary hearing is required prior to termination. *See Purisch,* 76 F.3d at 1424. Specifically, the Sixth Circuit has stated that "[p]rofessors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds." *Johnston-Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990).

The defendants assert that summary judgment should be granted regarding the federal claims outlined in Count I because Webb was provided with due process protections. She was notified of the decision to deny tenure by President Sias on January 29, 2008. It is undisputed that, after receiving this notification, she failed to file a timely appeal according to written procedures contained in the KSU Faculty Handbook. Further, Webb acknowledges receiving this letter from KSU President Sias. But, she contends, she did not take any action at that time because she was unaware of the basis for the decision denying tenure. However, as noted above, she did not seek to appeal within thirty days of being advised of the specific reasons that her tenure application was denied.

With respect to the process for appealing adverse tenure decision, Section 2.7.6 of the KSU Faculty Handbook provides as follows:

> An individual with faculty status who has been denied tenure or promotion has the right to appeal to the President for a hearing before the University Faculty Appeals Committee.
>
> This appeal shall be made by the faculty member no later than thirty (30) calendar days after receipt of official notice of denial of tenure and/or promotion. The request for review shall be in writing setting forth the basis for the review together with a statement of facts and support thereof. The basis for a review shall be a belief that the decision not to grant tenure resulted from improper procedure or rests on grounds which violate academic freedom. Within ten (10) working days of receipt of the request for a hearing, the President shall submit the request to the University Faculty Appeals Committee which must conduct a hearing within ninety (90) day period.

[Record No. 17, p. 7] This procedure provides sufficient procedural due process protections to those who seek to invoke it. Here, President Sias informed Webb on January 29, 2008, that she would not be given tenure. However, Webb did not seek to appeal this decision until May13,

-24-

2008, when she informed President Sias by e-mail that she believed the tenure decision was improper. [Record No. 20; Exhibits 3, 4] Thus, it is clear that Webb did not seek to appeal her denial of tenure within thirty days of being advised of the decision or the reasons for it.

Based on the undisputed facts, the Court concludes that Webb was provided with the procedural due process that was owed to her as a candidate for tenure. Therefore, her claim that the defendants violated her right of procedural due process fails. There is no evidence that, if Webb had made a timely appeal challenging the denial of her application for tenure, an appeal would not have been given to her. However, she did not have right to a hearing unless a timely request was made pursuant to the procedures outlined in the KSU Faculty Handbook. The handbook governs the timing and manner of notice that Webb was required to give to have the tenure decision reviewed.[7]

### 2.     Substantive Due Process

Substantive due process protects individuals from arbitrary action by the government. *County of Sacramento v. Lewis,* 523 U.S. 833. 845 (1998). Generally, a deprivation of substantive due process claim involves a government official's abuse of authority by acting in an arbitrary and capricious manner to deprive another of a property or liberty right. In loss of tenure cases, substantive due process "requires that the termination of a tenured professor's property interest not be 'arbitrary, capricious, or without a rational basis.'" *Anderson v. Ohio*

---

[7] The KSU Faculty Handbook is silent regarding the extent of reasons which must be given supporting a decision to deny tenure. However, even if additional reasons were required, this violation would not give rise to a cognizable claim. Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process. *See Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.) *cert. denied,* 509 U.S. 907(1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be admissible.").

*State Univ.,* No. C-2-00-123, 2001 U.S. Dist. LEXIS 25376, at *23 (S.D. Ohio Jan. 22, 2001) (quoting *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 528 (1998)). However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Lewis,* 523 U.S. at 846 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 129 (1992)). In determining what level of conduct is egregious enough to constitute a violation of substantive due process, the Supreme Court asks whether the conduct "shocks the conscience." *Id.* However, before addressing the question of whether the defendant's actions are arbitrary, the Court must first address whether a property interest has been established.

Substantive due process interests are much narrower than procedural due process interests because they involve interests protected by the United States Constitution. *Tyler v. University of Louisville*, 2006 U.S. Dist. LEXIS 85728, at *15 (W.D. Ky., Nov. 27, 2006). Conversely, procedural due process interests are created by state law. *Bell v. Ohio State University*, 351 F.3d at 248-50. In *Sutton v. Cleveland Bd. of Education*, 958 F.2d 1339, 1350-51 (6th Cir. 1992), the Sixth Circuit held that a state employee did not have a property or liberty interest to tenured employment under the substantive due process clause because tenure did not rise to "the level of a 'fundamental interest.'" The court applied this holding in *Black v. Columbus Public Schools*, 79 Fed. Appx. 735, 738 (6th Cir. 2003), concluding that a promotion is not a recognized interest under substantive due process. *See also Wu v. Thomas*, 847 F.2d 1480, 1485 (11th Cir. 1988); and *Clark v. Whiting*, 607 F.2d 634, 644-45 (4th Cir. 1979).

Based upon the authorities cited above, the Court concludes that Webb did not have a substantive due process interest in tenure. Thus, her federal claims asserted in Count I of her Complaint fail and her request for injunctive relief will be denied.

**D.** **The Defendants Have Established A Good Faith Basis For Not Granting Tenure Which Has Not Been Rebutted By Webb.**

In Count II of her Complaint, Webb alleges that: (a) she is a female over the age of 40; (b) she was replaced at KSU by a younger individual; and (c) the individual who replaced her within the KSU Nursing Department was less qualified. As a result, she claims that KSU's actions constitute age discrimination in violation of KRS 344.030. According to Webb, to state a claim of age discrimination, she must establish she was a member of a protected class, that she was subjected to adverse employment action, and that she was qualified for the position but it was filled by a younger person. *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146 (6th Cir. 1995).

Webb's age discrimination claim must be examined using the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). At the first stage of this analysis, the plaintiff must establish a prima facie case. Under the established framework for deciding discrimination cases set out in *McDonnell Douglas Corp.,* 411 U.S. 792 (1973), a plaintiff establishes a prima facie claim for failure to promote under Title VII by demonstrating that: (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and was denied a promotion; and (4) other employees not

in the protected class of similar qualifications received promotions. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020-21 (6th Cir. 2000).

If the plaintiff can make a prima facie showing by a preponderance of the evidence, she is entitled to a presumption of discrimination. *Burdine,* 450 U.S. at 254. And if the plaintiff establishes the elements for a prima facie case, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action it took against the plaintiff. *See McDonnell Douglas Corp.,* 411 U.S. at 802. If the defendant carries that burden of production, plaintiff must then prove "by a preponderance of the evidence" that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). More specifically, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994).

Webb states that the defendants have admitted in their answers to interrogatories that her replacement was a younger individual. She also asserts that the person who replaced her did not have a terminal degree in nursing and, therefore, was less qualified. Notwithstanding these claims, she has neither alleged nor offered proof that the person who allegedly replaced her was offered a tenured or non-tenured position. Thus, the Court cannot conclude that she had offered sufficient proof to establish a prima facie claim of age discrimination. However, even if a prima facie case had been established, the defendants have rebutted the claim by demonstrating that a good faith reason for not offering her a tenured position. In light of the plaintiff's lack of

scholarly activity and service, she was found by the university's tenure committee to be not qualified. And while Webb asserts that the reasons given for KSU's decision regarding tenure were pretextual, she has not submitted any evidence to support that contention.[8]

### E. Webb Has Not Provided Evidence of Retaliation to Support Her Claim of A Constitutional Violation.

To state a viable claim of retaliation under the First Amendment, the plaintiff must demonstrate that: (i) the plaintiff engaged in protected conduct; (ii) the defendant(s) took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) the adverse action was taken at least in part because of the exercise of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (*en banc*). As the Sixth Circuit recently recognized in *Holzemer v. City of Memphis*, No. 09-5086, 2010 U.S. App. LEXIS 19226 at *15 (6th Cir., Sept. 15, 2010), this inquiry is intensely content-driven.

Here, by the time Webb's attorney wrote to Dean Bennett on May 27, 2009, a final decision had been made regarding the Plaintiff's request for tenure. Further, the time to appeal that determination had expired over a year earlier. Therefore, any claim of retaliation must relate to adverse action taken in connection with a contract or other legally-protected right that could be claimed by Webb at that time. And as the above discussion demonstrates, at the time of this letter, Webb had completed her one year contract for the 2008-2009 school year. The contract she entered into regarding this school year explicitly stated that it would not extend beyond its

---

[8] In her deposition, Webb indicates that several individuals who were given tenure previously were deficient in the area of publications and writings. In addition to the fact that the tenure committee found Webb deficient in two areas, not just one, Webb has failed to establish that any of the individuals identified in her deposition were comparable to her in other meaningful ways. [Record No. 17; Exhibit A, p. 30] Therefore, she has failed to offer sufficient proof that the reasons given for her denial of tenure were a pretext.

stated term. Further, while Webb had received information from Olinger about a *potential* contract for the upcoming year, no contract had been presented to her for consideration. Webb was also aware at the time that Olinger did not have the ability to enter into binding contracts on behalf of KSU. Therefore, the Court concludes that she has failed to state a cognizable claim of retaliation because no adverse employment action was taken against her.

### F. Webb Has Not Offered Sufficient Evidence To Support A Claim Of Detrimental Reliance For A One-Year Oral Contract.

Webb may not assert a claim for an oral one-year contract based on representations of Dr. Betty Olinger. As noted previously, Webb may not contend that she detrimentally relied upon representations of Olinger because she was aware that Olinger could not contractually bind the KSU. [Record No. 17; Exhibit A, p. 26] In short, it is clear that Webb was fully aware that any offer of employment would not come from Olinger.[9]

Further, under state law, Olinger does not have authority to bind KSU to hire or retain employees. *See* KRS §164.360 (board of regents, acting on recommendation of university president, may bind university to contracts); KRS § 45A.245(1) (waiver of sovereign immunity for written – not oral – contracts); *Commonwealth v. Whitworth*, 74 S.W.3d 695 (2002). In addition to the fact that, under state law, university employment decisions are made pursuant to written contracts and are based upon the president's recommendation to the board of regents, the

---

[9] After citing the wrong standard governing the defendants' motion, Webb argues that summary judgment is inappropriate because she detrimentally relied upon statements from Dr. Olinger – made during the summer of 2008 – that she would be employed for the 2008-2009 academic year. As noted above, Webb received a one year written contract for this period. This contract establishes that, after Webb's application for tenure was denied, she was on notice that any further employment at the university would be for a one-year term. It is equally clear that Webb was aware that employment decisions would be in writing. Thus, regardless of any issue of reliance, Webb did not suffer any damage as a result of the alleged statements of Olinger in 2008 because she was subsequently employed for an additional year.

documents offered by Webb do not support her claim of detrimental reliance for the 2009-2010 academic year. The documents which are quoted above establish that many key parts of any potential offer of employment were unresolved. Further, these documents demonstrate that Webb was aware that any future offer of employment would not come from Olinger. Although Olinger clearly favored offering Webb further employment, she did not have the authority to do so on behalf of KSU.

In support of her argument, Webb cites *Patel v. Patel*, 706 S.W.2d 3 (Ky. App. 1986), for the proposition that, to sustain a claim of detrimental reliance, she need only prove that Olinger intended to mislead her and that she relied upon Olinger's statements to her detriment. However, the July 7, 2009 e-mail from Olinger to Webb does not establish these elements. The plaintiff claims that she was never advised that she would not be hired until she saw that her name had been removed from the faculty mailbox. And she asserts that, by this date, she lost opportunities for other employment. However, notwithstanding these assertions, there is no proof that Webb was ever offered employment for the 2009-2010 academic year by any person at KSU who was authorized to make such an offer. Accordingly, her claim of detrimental reliance is factually and legally misplaced.

### IV.

Plaintiff Dixie Webb has not demonstrated that KSU or any of its officials violated any procedural or substantive due process rights through the decision to deny her tenure application. Likewise, the plaintiff has not demonstrated a claim of age discrimination or that she had an oral

contract for the 2009-2010 academic year.  And finally, she has not offered sufficient proof of retaliation to overcome the defendants' motion for summary judgment.  Accordingly, it is hereby

**ORDERED** that the defendants' motion for summary judgment [Record No. 17] is **GRANTED**.  A separate Judgment will be entered this date dismissing this action from the Court's docket.

This 21st day of October, 2010.



Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**